IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Barbara Satterfield and Rick Satterfield, | ) | Civil Action No. 7:11-1514-MGL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The Fresh Market, Inc., Napa Home and | ) | OPINION AND ORDER |
| Garden, Inc., Fuel Barons, Inc., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| The Fresh Market, Inc., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Theodore Morris, CKS Packaging, Inc., | ) | |
| Berlin Packaging, Inc., Essential Ingredients, | ) | |
| Inc., MXI Environmental Services, LLC, | ) | |
| Ivystone Group, LLC a/k/a Homestyle and | ) | |
| and Ivystone Group, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

This matter is before the court on Third-Party Defendant MXI Environmental Services, LLC's ("MXI") motion for summary judgment against Third-Party Plaintiff The Fresh Market ("TFM"). (ECF No. 213.) On June 3, 2014, this court held a hearing on MXI's motion for summary judgment. For the reasons set forth below, the court grants MXI's motion for summary judgment.

**PROCEDURAL BACKGROUND**

Plaintiffs Barbara and her husband Rick Satterfield ("Plaintiffs") filed the instant action on June 21, 2011, against TFM and other defendants for injuries they sustained on May 25,

2011, arising from their use of a Napa Home and Garden "Firelite" fuel pot and Napa pourable eco-gel fuel. (ECF No. 7, at ¶1.) Plaintiffs plead causes of action against TFM based in negligence, negligent failure to warn, strict liability, negligent infliction of emotional distress, and claims a loss of consortium for Plaintiff Rick Satterfield. (ECF No. 1 at ¶¶57,72, and 102.) On March 15, 2013, Defendant TFM filed a Third-Party Complaint against MXI and others alleging claims for strict liability, negligence, contribution, and equitable indemnification. (ECF No. 100.) On July 17, 2013, following a hearing on motions to dismiss by MXI and others, the court dismissed TFM's claims for negligence, strict liability, and equitable indemnification against MXI. (ECF No. 146.) Thereafter, on April 29, 2014, MXI moved for summary judgment as to TFM's remaining claim for contribution on the grounds that as a supplier of a component part to a manufacturer, it cannot be liable to the seller of that product – TFM–where the component part produced by MXI was not defective and MXI did not substantially participate in the design of the end product (the eco-gel fuel) for which damages are sought. (ECF No. 213-1 at 1.)

## FACTUAL BACKGROUND

MXI is a bulk supplier of denatured ethanol, which it produces from recycled waste containing alcohol. (ECF No. 213-7 at 3-5). MXI primarily sells denatured ethanol to ethanol distributors or to actual oil companies. (ECF No. 213-7 at 4). It makes no direct sales to final consumers. *Id.* at 5. The record reflects that Defendant Fuel Barons, Inc. ("Fuel Barons") approached MXI in September 2009 about purchasing denatured ethanol to be used to create fuel for outdoor fireplaces. *Id.* at 7, 9. Fuel Barons was a manufacturer of fuel for outdoor fireplaces. (ECF No. 213-7 at 7.) The bottle of "pourable eco-gel fuel" at issue in this case was allegedly designed/manufactured by Fuel Barons. (ECF No. 7 at ¶34.) In an email sent to MXI's

Bryan Potter from Fuel Barons' Gene Hammond, Fuel Barons noted an intention to create a gel fuel product in the future, but provided no further information about the gel fuel.  (ECF No. 213-8 at 2.)  Fuel Barons later provided MXI with the formula for its liquid OZOfire bio-fuel, which contained ethyl alcohol, ethyl acetate (a denaturant), and Bitrex,[1] but did not provide MXI with the formula for the gel fuel it planned to add to its product line, the product that is at issue in the instant action.  (ECF No. 213-9 at 2.)  MXI had no knowledge of the specific formula for the gel fuel (ECF No. 213-7 at 20, 26, 33), but was aware that the fuel was being gelled by Fuel Barons at the Losorea Packaging, Inc. ("Losorea")  facility.  (ECF No. 213-7 at 30.)

As to the denatured alcohol ordered, Fuel Barons provided MXI with specifications for the denatured ethanol and purchased the denaturant and the bitterant to be added, and shipped them to MXI.  (ECF No. 213-7 at 6, 20, 23-24, 26, 35.)  MXI created only denatured ethanol according to Fuel Barons' requirements and shipped it in large tankers to the Losorea facility, where MXI understood the fuel would be bottled.  (ECF No. 213-7 at 10, 21, 25, 27, 30.)  MXI did not engage in mixing the raw materials together to make the final product or the gel fuel.  (ECF No. 213-10 at 9 and 213-11 at 6.)  Additionally, MXI was never provided with a sample copy of the fuel or bottle (ECF No. 213-7 at 10, 36), but was provided a picture of a bottle from a Napa trade show via email.  (ECF No. 213-7 at 33-34.)  MXI did not participate in any actions or decisions regarding the design, mixing, packaging, bottling, labeling, or shipping of the gel fuel with Fuel Barons, relying upon Fuel Barons, the manufacturer of the product to do so.  (ECF No. 213-7 at 19, 21.)

---

[1]Bitrex is a bitterant used to discourage human consumption of dangerous or toxic products.  (ECF No. 213-7 at 27.)

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2) (2009).  The movant has the burden of proving that summary judgment is appropriate.  Once the movant makes the showing, however, the opposing party must respond to the motion with "specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

When no genuine issue of any material fact exists, summary judgment is appropriate.  *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir.1991).  The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party.  *Id.*  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial."  *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir.1992).  The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**DISCUSSION**

MXI seeks dismissal of TFM's claim for contribution on the grounds that it is a mere components parts manufacturer, and not the manufacturer of the final product which injured Plaintiffs. The Restatement (Third) of Torts: Products Liability, § 5 (1998), provides that:

> One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if: (a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or (b) (1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and (2) the integration of the component causes the product to be defective, as defined in this Chapter; and (3) the defect in the product causes the harm.

Restat. (Third) Torts: Prod. Liab., § 5 (1998).

Additionally, Section 5 cmt. c, notes that "raw materials, such as sand, gravel, and kerosene, cannot be defectively designed." *Id.* Ethanol, like kerosene, can be sold in bulk to refiners or to individual consumers, and both are highly flammable, indicating that ethanol likely is a non-defective "raw material" in light of this language. Restat. (Third) Torts: Prod. Liab., § 5. Courts generally do not impose liability or a duty to warn on raw materials suppliers, because to do so would force suppliers to closely scrutinize manufacturing processes and products over which they have no control, and at prohibitive expense. *Id.* at cmt. c. Instead, decisions regarding the use of raw materials in a different final product are attributable to the manufacturer of the final product, not the supplier of the raw materials. *Id.*

Generally, a component part manufacturer is not liable for harm caused by the final product into which it is integrated where the component itself is not defective. *Phillips v. South Carolina State University*, Opinion No. 2005-UP-320, 2005 WL 7084045 (S.C. Ct. App. May

5

12, 2005) (*citing* 63 Am. Jur.2d Products Liability § 147 (2004)).[2]  *See also Sperry v. Bauermeister, Inc.,* 4 F.3d 596, 598 (8th Cir. 1993); *Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 49 (6th Cir. 1989); *Walker v. Stauffer Chemical Corp.*, 19 Cal.App.3d 669, 672-73, 96 Cal.Rptr. 803 (Cal. Ct. App. 1971).  Review of the record reflects that none of Plaintiff's experts have indicated the denatured ethanol produced by MXI was defective itself.  As such, MXI should not be liable to TFM for contribution as a supplier of a non-defective raw material.  (ECF Nos. 227-2, 227-3, 227-4, 227-5.)

The South Carolina Court of Appeals embraced § 5 of the *Restatement (Third)* in *Phillips.*  Thus, if the component is not defective, the supplier of a component part is liable to the final consumer only if the supplier "substantially participates" in "the integration of the component into the design of the final product."  *Phillips*, Op. No. 2005-UP-320, 2005 WL 7084045 at *4 (*citing* Restat. (Third) Torts: Prod. Liab. § 5 at reporter's note cmt. e). "Substantial participation" requires a component supplier to have "control over the design of the completed product."  *Id.* (*citing Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1242 (6th Cir. 2005)).  A component supplier who "merely designs a component to its buyer's specifications does not 'substantially participate' for products liability purposes."  *Phillips*, Op. No. 2005-UP-320, 2005 WL 7084045, at *4 (*citing* Rest. (Third) Torts: Prod. Liab. § 5 at reporter's note to cmt. e).  Further, knowledge of the final design and/or of the intended use of the component part is still insufficient to subject the component supplier to liability for the final

---

[2]While *Phillips* is an unpublished case and is not binding precedent, the court finds its reasoning persuasive as it addresses issues currently before the court and the parties have not cited and the court is unaware of any other South Carolina case that specifically addresses these issues.

product. *Phillips*, Op. No. 2005-UP-320, 2005 WL 7084045, at *4. Viewing the evidence in the

in the most favorable light to TFM, MXI had knowledge that a gel fuel was being produced and would be sold in bottles. (ECF No. 213-7 at 30, 33-34.) However, MXI had no knowledge of the specific formula of the gel fuel or the specifications of the bottling and packaging process. (ECF No. 213-7 at 18-21, 26, 33.) Further, MXI merely produced its denatured ethanol, which has never been found to be defective, and shipped the denatured ethanol to the Losorea facility. (ECF No. 213-7 at 10, 21, 25, 27, 30.) Under *Phillips*, this evidence alone, without further evidence of increased control of the design of the gel fuel itself by MXI, is not sufficient to create a genuine question of fact regarding whether MXI "substantially participated" in the design of the Napa eco-gel fuel that allegedly injured Plaintiffs.

MXI also seeks dismissal of the contribution claim on the grounds that there is no duty to warn for components suppliers. Generally, there is no duty for a component parts supplier to analyze the safety of a completed product that incorporates the supplier's non-defective component due to prohibitive expense. *Phillips,* Op. No. 2005-UP-320, 2005 WL 7084045, at *4 (*citing Childress*, 888 F.2d at 49). Likewise, there is no duty to warn end users of potentially dangerous uses to which the component part may be put in the final product, because this would require speculation as to the potential uses of the final product, which is not manufactured by the components supplier. *Phillips,* Op. No. 2005-UP-320, 2005 WL 7084045, at *5 (*citing Jacobs*, 67 F.3d at 1236)). In this matter, MXI relied on Fuel Barons, the manufacturer of the end product (the gel fuel), to protect and warn end users. (ECF No. 213-7 at 19.)

With respect to the shipping of the denatured ethanol, a flammable raw material, the record reflects that MXI complied with all required Department of Transportation ("DOT")

labeling regulations with respect to its shipping of the denatured ethanol to the Losorea facility. (ECF No. 213-7 at 19.)  Given the common knowledge of the flammability of denatured ethanol, MXI's labeling on its tankers as specified by DOT was reasonable under the circumstances and MXI had no duty to provide additional warnings.  As such, MXI is not liable for contribution on a duty to warn theory.

## CONCLUSION

Accordingly, for the foregoing reasons, the court GRANTS MXI's Motion for Summary Judgment.  This matter is hereby dismissed as to MXI.

IT IS SO ORDERED.

Mary G.  Lewis
United States District Judge

June 16, 2014
Spartanburg, South Carolina