IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION


BARBARA SATTERFIELD, ET AL.,    )
                                )
          Plaintiffs,           )    July 16, 2013
                                )
     -versus-                   )    7:11-1514
                                )
                                )    Spartanburg, SC
NAPA HOME & GARDEN INC.,        )
ET AL.,                         )
          Defendants.           )


TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE MARY G. LEWIS
UNITED STATES DISTRICT JUDGE, presiding


A P P E A R A N C E S :

For the Plaintiffs:          THOMAS D. HOYLE, ESQ.
                             KEVIN R. DEAN, ESQ.
                             Motley Rice
                             28 Bridgeside Blvd.
                             Mt. Pleasant, SC 29464

For the Defendants:          BEATTIE B. ASHMORE, ESQ.
                             650 E. Washington St.
                             Greenville, SC 29601

                             W. RAY PERSONS, ESQ.
                             SUSAN M. CLARE, ESQ.
                             King and Spalding
                             1180 Peachtree St. NE
                             Atlanta, GA 30309

                             E. RAYMOND MOORE III, ESQ.
                             WESLEY B. SAWYER, ESQ.
                             Murphy and Grantland
                             PO Box 6648
                             Columbia, SC 29260

**Exhibit 1**

N. HEYWARD CLARKSON III, ESQ
Clarkson Walsh Terrell
     and Coulter
PO Box 6728
Greenville, SC 29606

Court Reporter:          KAREN E. MARTIN, RMR, CRR
                         300 E. Washington Street
                         Room 304
                         Greenville, SC 29601

The proceedings were taken by mechanical stenography and
the transcript produced by computer.

3

Tuesday, July 16, 2013

1

2    (WHEREUPON, court was called to order at 2:02 p.m.)

3        THE COURT:  This is the case of Satterfield and

4    others against Napa Home & Garden.  It's Case

5    No. 7:11-1514.  I think we're here for a motion to dismiss

6    by each of the third-party defendants and also a motion to

7    amend the scheduling order.  Is that correct?

8        MR. PERSONS:  Yes, Your Honor, it's a motion to

9    dismiss by several but not all of the defendants.

10        THE COURT:  Not all, okay.  All right.

11        MR. PERSONS:  And a motion to amend the

12    scheduling order.

13        THE COURT:  All right.  Well, I've got one by

14    Berlin Packaging, CKS Packaging, MXI Environmental

15    Services, Ivystone, and Theo Morris; is that right?

16        MR. MOORE:  Yes, Your Honor.  Ray Moore for

17    Berlin.  We understood our motion to be pending today.

18    I'm not sure if the briefing is closed on all of the

19    motions that have been filed.

20        THE COURT:  Okay.  All right.  So are you going

21    to argue first?

22        MR. MOORE:  Yes, Your Honor, if it suits Your

23    Honor's pleasure.

24        THE COURT:  Okay.  Be happy to hear from you.

25        MR. MOORE:  May it please the Court?  Your

4

1    Honor, my name is Ray Moore with the Murphy and Grantland

2    firm in Columbia.  I represent Berlin Packaging, LLC, one

3    of the third-party defendants in this case.  By way of

4    brief background on my client, we are a supplier of

5    packaging materials.

6            With regard to this case, Berlin did not

7    manufacture, assemble, or package any fuel gel that's

8    alleged in the underlying complaint.  We are best known as

9    a bottle broker.  If, in fact, the bottle involved in this

10   case came through my client, then the way it would have

11   occurred is that Fuel Barons, one of the principal

12   defendants or who was a principal defendant here, would

13   have selected the bottle from my client's catalog.  My

14   client would have purchased the bottle which would have

15   been manufactured by CKS represented by Mr. Clarkson.  And

16   it would have ended up in the chain of distribution with

17   the plaintiffs if all the facts are as alleged in this

18   case.

19           With respect to this case, there is no

20   relationship between my client, Berlin, and The Fresh

21   Market, and none has been alleged.  Through -- when we

22   initially filed our motion to dismiss, we understood that

23   there were four causes of action, strict liability,

24   negligence, equitable indemnity, and contribution.

25           We understand now from the briefing that they

1    have been whittled down, essentially, to one cause of

2    action.  The plaintiffs have abandoned -- excuse me, the

3    third-party plaintiffs have abandoned the strict liability

4    and negligence causes.  They have not briefed the

5    indemnity cause probably on the basis that there's no

6    special relationship between us and none alleged.

7            And so now we're left with a contribution claim

8    which, really, I think makes up the bulk of what is before

9    Your Honor today.  So the issue before Your Honor is, is

10   the South Carolina Contribution Acts requirement that a

11   party pay more than its pro rata share of a verdict or

12   settlement and extinguish the common liability before

13   bringing a contribution claim a procedural or a

14   substantive requirement?

15           If it is a procedural requirement, under Fourth

16   Circuit precedent, there's an additional inquiry that the

17   Court should make; and that is, is the so-called

18   procedural requirement intimately bound up with the state

19   law such that it should be handled under state law?  And

20   then there would be a third requirement under Fourth

21   Circuit precedent; and that is, even if it is not

22   intimately bound up, do principals of state law and comity

23   suggest that the federal court should apply the state law

24   requirement as opposed to a federal rule?

25           Here, we suggest that the Court can end its

6

1    inquiry with the first level of analysis; and that is,

2    that this is, in fact, a substantive requirement.  Why do

3    we say that?  The Court need look no further than the

4    South Carolina Supreme Court's interpretation of the South

5    Carolina Contribution Act in the First General Services

6    vs. Miller case.

7            In that case, the Supreme Court addressed this

8    very issue in the context of a Rule 14 impleader involving

9    an indemnity claim on the one hand, similar to what is

10    alleged here, and a contribution claim on the other hand.

11    In that case, the Supreme Court, under a different set of

12    facts, allowed an indemnity claim to go forward, in a

13    sense accelerated the indemnity claim even though no

14    judgment or settlement had been paid in that instance

15    because there was a special relationship between the

16    third-party plaintiff and the third-party defendant.

17            In that case, however, the Supreme Court treated

18    the contribution claim differently.  They treated the

19    statutory requirement of a prepayment of the common

20    liability as a substantive requirement to bring the claim.

21    We submit to Your Honor that the analysis under Rule 14 of

22    the state court rule, the operative language of which is

23    identical to Rule 14 of the Federal Rules of Civil

24    Procedure suggested to the Supreme Court that they would

25    allow the indemnity claim to proceed but disallow the

1  contribution claim because it had not yet accrued.  In

2  this case we suggest the same result.

3          Here, the indemnity claim that existed in First

4  General Services does not exist because there's no special

5  relationship and because, even if everything they have

6  pled is true, they would come in as joint tortfeasors with

7  no right of recovery under our state court cases of Scott

8  v. Fruehauf and the Vermeer case that are cited in our

9  papers.

10          So to the contribution claim, once again, the

11  Supreme Court disallowed it as a substantive matter

12  because no prior payment had been made and none has been

13  made and none has been alleged here.

14          Why would the South Carolina Supreme Court treat

15  it as substantive?  Well, first, we submit because the

16  language of the statute suggests that it's substantive.

17  The right does not accrue.  Similar to a statute of

18  limitations that would terminate a right, the state

19  contribution act creates a right that accrues at a

20  specific point in time; and that is, when more than a pro

21  rata share of common liability has been paid and the

22  liability of the putative third-party defendant here has

23  been extinguished.  Neither one of those things have

24  occurred.

25          And so it's important to point out to the Court

8

1    that the -- that this should not be accelerated as a

2    claim, as the third-party plaintiff has suggested, because

3    the claim has not accrued, number one.  And significantly,

4    because my client's right or my client's potential

5    obligation can still be extinguished through no conduct or

6    operation of the third-party plaintiff.  And I would turn

7    to --

8              THE COURT:  Well, let me ask you something.

9    That case, the South Carolina Supreme Court case --

10             MR. MOORE:  Yes, Your Honor.

11             THE COURT:  In -- I see how they ruled, but

12   there is language in their discussion about Rule 14.

13             MR. MOORE:  Yes.

14             THE COURT:  And they say at any time after

15   commencement of the action of a defending party, a

16   third-party plaintiff may cause a summons and complaint to

17   be served upon a person not a party to the action who is

18   or may be liable.  What does that -- what does the may be

19   liable mean?  I mean, it sounds to me like it's at least

20   for some purposes recognizing sort of a contingent --

21             MR. MOORE:  Sure.  And I believe that operative

22   language is the same language as the federal rule.  And in

23   the case of indemnity in First General Services, the Court

24   acknowledged that they may be liable.  And therefore, as a

25   procedural matter, it was allowed even though the

1    liability --

2        THE COURT:  So it's under the indemnity.

3        MR. MOORE:  Under the indemnity even though it

4    wasn't a certainty.  That's why I think it's so important

5    that here at this point my client may not -- cannot be

6    liable to the third-party plaintiff because they have not

7    extinguished my liability.  They have not pled that they

8    have obtained a release, paid more than their pro rata

9    share, and extinguished my liability.  And until that

10    occurs, they have no right.  And that's what the Supreme

11    Court recognized as a substantive right in First General

12    Services.  Until that occurs, I can extinguish a right to

13    contribution under the terms of the contribution act by

14    reaching a good faith settlement with the plaintiff.

15        So for that reason, we suggest that the Supreme

16    Court has answered the question.  Indemnity, it's

17    procedural; contribution, it's substantive.  And that the

18    question of whether it should be allowed under the federal

19    rules is no under the Erie and Hanna vs. Plumer analysis.

20        THE COURT:  Okay.

21        MR. MOORE:  The third-party plaintiff has cited

22    to Your Honor two district court cases from Judge Norton

23    and one case -- unreported case from Judge Currie that

24    suggests different results.  And we would respectfully

25    submit to Your Honor that the Brown case, Judge Norton's

10

1    case, was wrongly decided and should not be followed in

2    this instance for several reasons.

3          First, if you would look at the text of the

4    Brown vs. Shredex case, you'll see that the Judge Norton

5    did not compare the treatment that the South Carolina

6    Supreme Court gave to indemnity as a procedural matter and

7    contribution which was a substantive rule.  So we believe

8    that if the Court looks at the difference and the

9    dichotomy between that indemnity and contribution in the

10   First General case, you will -- it will suggest that this

11   is a substantive requirement.

12         The second thing is that the Brown case did not

13   account for the requirement that the third-party plaintiff

14   or the party seeking contribution obtain the release of

15   the party who it's seeking contribution from.  Not been

16   done here.  The decision did not account for the fact that

17   the claim against my client would have to be extinguished

18   in order to give the right to contribution.

19         The critical distinction in my mind in the Brown

20   case is that Judge Norton did not discuss the Fourth

21   Circuit precedent and the Fourth Circuit analysis.  And

22   that's the three-prong analysis that I gave to Your Honor

23   to start with that's in the -- there are two Beech

24   Aircraft cases and the -- I believe it's the Schmucker

25   Manufacturing case {verbatim} that's cited in our papers.

1    I apologize if I got the name wrong.

2           So the three-pronged analysis, is it

3    substantive?  We believe it's yes.  But even if the Court

4    finds that it's not substantive, the Fourth Circuit would

5    require a further look, is it intimately bound up in the

6    state law?  And if the Court over --

7           **THE COURT**:  What are you looking at to determine

8    that?  That sounds like those words that don't mean a lot

9    to me.

10          **MR. MOORE**:  Not familiar with it?  In this case,

11   what I think you would look at is the requirement that

12   we're discussing is found within the text of the statute

13   given by the general assembly.  In one of the Fourth

14   Circuit cases that we've cited to Your Honor, Hottle vs.

15   Beech Aircraft, the Fourth Circuit wrestled with the issue

16   in the context of an evidentiary rule, a substantive

17   evidentiary rule in Virginia that would have prohibited

18   the admission of evidence of internal procedures.  And of

19   course, in many states, including South Carolina, evidence

20   of internal procedures and policies has been offered to,

21   when the defendant doesn't act in conformity therewith,

22   it's evidence of negligence.  In Virginia, the substantive

23   rule was different.  And it was an evidentiary common law

24   rule and the court said despite the Federal Rules of

25   Evidence, if a court's sitting in diversity, we must apply

1    the Virginia substantive rule, or in that case, they said

2    it was intimately bound up with Virginia state policy.

3    And here, I would submit to Your Honor, that the

4    requirement of extinguishment of my liability and payment

5    of more than their pro rata share is intimately bound up

6    at the least with the state statute created right of

7    contribution.

8           And there are valid reasons that our

9    legislature, and indeed the Supreme Court, would want to

10    prescribe how broadly we can cast the contribution net.

11    We've -- I've heard for years and years, before even

12    graduating law school, the oft cited maxim that the

13    plaintiff is the master of her complaint.  And of course,

14    this rule destroys that maxim that the plaintiff is the

15    master of her complaint.  What they're seeking to do is

16    something that plaintiffs often specifically and

17    intentionally decide not to do; and that is, not to name

18    so many parties such that the liability picture may be

19    diluted or apportionment of fault may not be spread among

20    multiple defendants.

21           The Brown case is a perfect example of why the

22    rule is wrong.  In the Brown -- of why that decision was

23    wrong.  In the Brown case, the plaintiff brought an action

24    against a paper shredder seller.  And the paper shredder

25    seller attempted to implead the plaintiff's father or the

13

1    ward's father.  So what the court -- what the court then

2    effectively would allow is an allocation or imputation of

3    fault to a non-party.

4            So the way that that would bear out in this case

5    is -- if the Court were to permit this third-party claim,

6    then there would be questions with regard to the

7    third-party defendants whether we would become

8    fourth-party plaintiffs and address with those involved in

9    the situation that brought about this tragic accident, was

10   there -- are there other conceivable, potentially

11   responsible parties who should be fourth-party defendants?

12   Should the person who ignited the pot, should the person

13   who poured the gel fuel be a fourth-party defendant?  And

14   we would submit under the First General Services case, the

15   answer would be no.

16           Should the Court follow Brown vs. Shredex and

17   the Tetra Tech case, which I would not concede that that

18   decided the issue, but if the Court followed that, then

19   the next step would be the continued so-called shotgun

20   approach that we've seen with the naming of these seven or

21   eight defendants with additional fourth-party defendants,

22   really only constrained by the imagination of a defense

23   lawyer who suddenly fancies himself a plaintiff's lawyer

24   trying to decide how many people he can --

25           **THE COURT:**  Big mistake.

1      **MR. MOORE:**  So what are the constraints?  Well,

2  in the indemnity situation, there are common law

3  constraints.  You can't just willy-nilly sue anyone for

4  equitable indemnity.  You can sue someone you have a

5  special relationship with under the long line of South

6  Carolina cases dealing with equitable indemnity.  And you

7  also have to prove that you're without fault.  So it's

8  basically an imputed-fault situation.

9      We don't have the same constraints under

10  contribution.  The legal remedy doesn't have the same

11  constraints as the equitable remedy.  So we need some

12  constraints.  And the legislature put them in and the

13  Supreme Court recognized them.  And the constraint is that

14  you have to have resolved the common liability and you

15  have to obtain the release and pay more than your pro rata

16  share.  Any time before that, I can extinguish my own

17  liability.  I can extinguish my liability for contribution

18  by a settlement.

19      So with all of that being said, we believe that

20  it is very clearly a substantive law, a substantive right,

21  not a procedural issue.  And I don't believe Judge Norton

22  addressed the Fourth Circuit law on how to distinguish

23  between these.  He did acknowledge Wright and Miller and

24  their commentary on it, none of which has addressed and

25  none of which dealt with the South Carolina Contribution

1   Act, none of which addressed the First General Services

2   case decided by our Supreme Court.

3       I believe that's all I wanted to present to Your

4   Honor.  I appreciate the opportunity to be here.

5       **THE COURT:**  Okay.  Thank you.

6       **MR. PERSONS:**  May it please the Court?  Ray

7   Persons for The Fresh Market.  I don't fancy myself a

8   plaintiff's lawyer, although I have nothing against

9   plaintiff's lawyers.  We're simply seeking to enforce the

10  procedure provided under Rule 14 of the Federal Rules of

11  Civil Procedure that allow for contribution claims to be

12  asserted.  Judge Norton in the Brown case, and more

13  recently, Judge Currie in the Tetra Tech case got it

14  right.  It's procedural.  The right is created, but

15  whether it accrues or not, that's purely procedural.

16      As Judge Norton said in Brown, If the governing

17  law recognizes a substantive claim, its accrual and the

18  method of its presentation are properly regarded as

19  procedural.  The impleader rule properly applies to

20  accelerate the claim even if state law does not permit its

21  accrual or assertion until after the defendant has

22  incurred a loss.  That's precisely the situation that

23  we're in here.  And that's the rights that we're seeking

24  to have enforced.

25      It remains to be determined whether there will

1    be joint and several liability or whether there will be

2    liability whatsoever.  But that does not preclude the

3    bringing of the impleader action at this juncture in the

4    proceedings.

5            So I would respectfully submit that the Court

6    should follow the decisions by Judge Norton and Judge

7    Currie, in the Brown and Tetra Tech cases respectively,

8    and permit The Fresh Market's third-party claims to go

9    forward.  And I'm happy to answer any questions.

10           THE COURT:  Are we correct that all you have now

11   against these particular third-party defendants is the

12   contribution claim?

13           MR. PERSONS:  Yes, Your Honor.

14           THE COURT:  All right.  I wanted to make sure.

15           MR. PERSONS:  Yes.  We don't have the -- we've

16   reassessed the validity of the equitable contribution

17   claims.  And in light of South Carolina Supreme Court

18   precedent, we can't bring those, not as to these

19   third-party defendants.  And we're not bringing

20   independent negligence and strict liability claims against

21   these defendants.  These claims are purely derivative and

22   contribution.

23           THE COURT:  All right.

24           Would anyone like to speak in reply?

25           MR. CLARKSON:  May it please the Court?  I'm

1  Heyward Clarkson and I represent CKS Packaging.

2         THE COURT:  Yes, sir.

3         MR. CLARKSON:  And the only thing I want to

4  emphasize, it's already been brought up before, but in

5  Fresh Market's prayer for relief in their third-party

6  action, they're trying to add these third-party defendants

7  as first-level offenders and they can't do that.  The

8  plaintiff can sue who they choose to sue and who they

9  choose not to sue.  And that's been the law forever.  And

10 under their prayer for relief, what they're attempting to

11 do is have these third-party defendants, under the theory

12 of contribution, which they can't do which has well been

13 covered, to make them a first-party defendant being sued

14 by the plaintiff, which they didn't do.  And so that just

15 messes up the whole system.  And I think that is just

16 basic law, that the plaintiff can sue who they want to

17 sue.  And a defendant can't change that in the course of

18 the litigation.

19         THE COURT:  All right.  Thank you.

20         Yes, sir?

21         MR. MARION:  May I?

22         THE COURT:  Sure.

23         MR. MARION:  She told me to come up and speak

24 where she could here me.  Frankie Marion representing MXI.

25 Before I do, I want to thank the Court for the

1    accommodation last week so that I and other members of my

2    firm and other attorneys could attend the funeral.

3              THE COURT:  You're welcome.

4         MR. MARION:  We greatly appreciate that.  The

5    only thing I would add that's particular to MXI is under

6    the allegations of the complaint by The Fresh Market in

7    that there's no allegation that it did anything, wrong or

8    otherwise.  And I would call the Court's attention to

9    Paragraph 16 of the third-party complaints on Page 4.  And

10   it -- and I'll just read it.  It says, Upon information

11   and belief, MXI manufactured, distributed, and sold

12   denatured ethanol to manufacturers of fuel gel to be

13   included as its primary ingredient.

14             Well, I'm not conceding that point.  I don't

15   know that we did.  But assuming that to be true, so what?

16   Ethanol's a fuel.  We had no design -- there's no

17   allegation we designed the fuel, we mixed it, had anything

18   to do with the fuel gel.  We didn't install it.  We didn't

19   have a duty to put warnings.

20             THE COURT:  But y'all haven't done discovery

21   yet, have you?

22             MR. MARION:  But they still have to allege

23   something against us.  The fact that we manufactured a

24   product, in and of itself, means nothing.  There's nothing

25   in here that ties us to The Fresh Market, number one.  But

19

1    beyond that, there's nothing here that ties us to

2    anything.  We just manufactured alcohol.  And I guess, not

3    trying to be flip, but so what?  It's a fuel.  They have

4    to allege something else that we did, that either it was

5    defective or that we had some involvement with the

6    ultimate product.  They've alleged none of that.

7            And so disregard -- going a step beyond what's

8    already been argued, here there has to be some allegation

9    so we know what we're fighting against.  And I would --

10   under the Twombly and other cases, they have to allege

11   facts, an essence of facts, a central fact so that we can

12   determine what the basis of our liability is.  They have

13   done -- not done that.  Being a manufacturer does not do

14   that.  There has to be something more.

15           So at this stage, I submit, they haven't.  The

16   pleadings are too bare bones.  They haven't asserted

17   enough against MXI to make any type of nexus to any of the

18   allegations in the primary complaint.

19           **THE COURT:**  Okay.

20           **MR. MARION:**  Thank you.

21           **THE COURT:**  Any response to that?

22           **MR. PERSONS:**  Yes, Your Honor.  If I understand

23   the argument, it's an 8(a) argument.  Essentially, that

24   they haven't been placed on notice of what it is they're

25   being accused of.  And I would humbly submit that if the

1    contaminant, the ethanol was -- if the ethanol was

2    contaminated, then that would constitute a product defect.

3    It remains to be determined whether that's the case

4    because we are going to embark on discovery to find out.

5    And if we learn that to be the case, then we can come back

6    and seek leave to amend to more clearly and further

7    delineate that.  But this is not the stage in which that

8    needs to be or should be addressed, certainly not against

9    us.

10              THE COURT:  Maybe you could be a plaintiff's

11    lawyer.

12              MR. PERSONS:  Well, I'm working on it.  But

13    that's where we are.  And I would submit to the Court that

14    discovery should add to the body of knowledge that we can

15    bring to bear on these pleadings and on these proceedings.

16    And so I'd respectfully request that that motion be

17    denied.

18              THE COURT:  All right.

19              MR. PERSONS:  Thank you.

20              THE COURT:  Okay.  Thank you.  Well, I'll take

21    that under advisement.

22              You also have a motion to amend the scheduling

23    order and have 30 extra days from whenever I issue my

24    ruling on these motions.  It was a joint motion, right?

25    All right.  Well, I'll grant that motion and get my order

21

1    out on these motions to dismiss as soon as I can.

2           **MR. MOORE:**  Just for point of clarification,

3    does that mean that the deadlines that existed in the

4    order that was in place before my client was added,

5    they'll be backed up to 30 days -- beginning 30 days from

6    the date Your Honor issues?

7           **THE COURT:**  Well, I don't know.  Y'all submitted

8    the order.  I don't know what you're intending to do.

9           **MR. MOORE:**  Okay.  I would suggest that the

10   point when Your Honor issues your ruling would be kind of

11   the new commencement date.  And then the dates that were

12   in place would be backed up to that point as opposed to

13   wherever we were because we weren't involved in the case

14   at that time.

15          **THE COURT:**  That's -- is that -- am I

16   understanding that correct?  That's kind of what I

17   thought.

18          **MS. CLARE:**  The motion that we filed, Your

19   Honor, was a motion that the parties would come back

20   within 30 days and submit a new revised scheduling order.

21          **THE COURT:**  Oh, well, why don't we do that.

22   That way you'll have time to get that all worked out.  And

23   I'll get the order out on the motions to dismiss as soon

24   as I can.  Thank you.

25          (WHEREUPON, court was adjourned at 2:30 p.m.)

22

1                              * * *

2    I certify that the foregoing is a correct transcript from

3    the record of proceedings in the above-entitled matter.

4

5       s/Karen E. Martin                    2/24/2014
     _____      _____
6    Karen E. Martin, RMR, CRR            Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25